BRETT J. WILLIAMSON (S.B. #145235)
bwilliamson@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660-6429
Telephone: +1 949 823 6900
Facsimile: +1 949 823 6994

RANDALL W. EDWARDS (S.B. #179053)
redwards@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

Attorneys for Plaintiff
CoreLogic, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| CORELOGIC, INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JOHN DOES 1-10,<br><br>　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. **Computer Fraud and Abuse Act (18 U.S.C. § 1030)**<br><br>2. **Defend Trade Secrets Act (18 U.S.C. §§ 1836, 1839)**<br><br>3. **California Uniform Trade Secrets Act (Cal. Civ. Code §§ 3426 *et seq.*)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff CoreLogic, Inc. alleges as follows:

1. CoreLogic brings this John Doe action to obtain relief for the harm it suffered from presently unknown persons who attacked CoreLogic's computer systems to obtain unauthorized access to valuable CoreLogic business information, including compilations of data. The unauthorized access violates federal and state law protecting businesses from such cyber attacks. While CoreLogic was able to identify and contain the harm to its systems, it nonetheless suffered economic harm and reasonably fears that unless equitable relief is obtained it will face further attack attempts in the future.

## Parties

2. CoreLogic is a Delaware corporation with its principal place of business in Irvine, California.

3. Defendants John Doe 1-10 are individuals of unknown residence and citizenship. CoreLogic does not know John Does 1-10's identities or locations at this time. CoreLogic has identified at least some of the IP addresses, but not the individual perpetrators, involved in the attack. CoreLogic will amend its complaint to name any of the John Doe defendants as soon as their identities are learned.

## Jurisdiction and Venue

4. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, because this action alleges violations of the Computer Fraud and

Abuse Act, 18 U.S.C. § 1030 and the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1839.  This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). Depending on the residence of defendants, venue may also be proper under 28 U.S.C. § 1391(b)(1) or (3).

Facts and Background

6. CoreLogic is a data and analytics company that provides valuable in-depth property information to business and government entities. CoreLogic manages over 4.5 billion records, including 99.9% of U.S. property records, and more than 600,000 users access its homeowner and property database annually.

7. Risk Meter, one of CoreLogic's valuable and innovative products, is a web-based platform that delivers building characteristics, catastrophe modeling, and aggregate mapping to clients such as underwriters, brokers, and agents. Risk Meter provides over 30 different natural hazard risk reports and highly granular risk data, including data that could identify information associated with particular real properties.

8. CoreLogic maintains a proprietary and confidential development database that stores client user identification and password information, user information, and real property data related to the Risk Meter application.

9. The contents of the Risk Meter database are carefully secured by

CoreLogic. CoreLogic rigorously protects its data, with security measures including, among other things, security audits, regular system testing, rigorous staff training, and continuously updated business-continuity planning. Access to the Risk Meter database is tightly controlled and restricted to individuals who are subject to authentication and identity confirmation procedures.

10. On or about February 7, 2019, one or more of John Does I-X used a SQL injection attack originating from the IP address 192.186.183.138 to obtain unauthorized access to and make copies of data used in application and client development that CoreLogic maintained on its Risk Meter development database.

11. Shortly thereafter, on or about February 7, 2019, one or more of John Does 1-10 acted without authorization to exfiltrate the copied contents of the Risk Meter development database by downloading them to an FTP server located at IP address 104.168.99.29.

## Count One

(Computer Fraud and Abuse Act, 18 U.S.C. § 1030)

12. CoreLogic realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-11 above.

13. CoreLogic's proprietary development database for its Risk Meter application is stored on CoreLogic's protected computers. Those computers, including the database, contains information that affects interstate commerce because CoreLogic develops and sells its products and services for use throughout

the United States. The Risk Meter application delivers property risk information (regarding flood zones, earthquake risk, etc.) to insurance companies nationwide.

14. John Does 1-10 knowingly and without authorization accessed CoreLogic's computer system and used that access to wrongfully obtain CoreLogic's valuable proprietary information from its Risk Meter development database.

15. John Does 1-10 knowingly and without authorization accessed and copied and took CoreLogic's proprietary database files from CoreLogic's computers.

16. John Does 1-10's wrongful access to, copying of, and exfiltration of CoreLogic's database files from CoreLogic's computers has caused economic harm to CoreLogic in an amount to be proven at trial but that exceeds $5,000. The harm includes both CoreLogic's costs to respond to the unauthorized cyberattack from February 7, 2019, through and including the date and filing of this complaint (including third party computer forensics assistance and upgraded security appliances such as web application firewalls), the loss of value associated with theft of copies of its valuable, proprietary data files, continuing business interruption costs, and reputational harm.

17. In accessing without authorization CoreLogic's protected computer containing database files, and in copying and exfiltrating CoreLogic's valuable information, John Does 1-10 committed fraud under, *inter alia*, sections (a)(2)(C),

(a)(4), and (a)(5)(C) of 18 U.S.C. § 1030. CoreLogic is entitled to relief under 18 U.S.C. §§ 1030(g) and 1030(c)(4)(A)(i)(I).

Count Two

(Defend Trade Secrets Act, 18 U.S.C. §§ 1836, 1839)

18. CoreLogic realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-17 above.

19. The facts alleged above also constitute actual and threatened misappropriation of CoreLogic trade secrets by John Does 1-10 under 18 U.S.C. §§ 1836 and 1839.

20. The confidential and proprietary CoreLogic material that John Does 1-10 misappropriated – including but not limited to the contents of the Risk Meter database – are trade secrets of CoreLogic within the meaning of 18 USC § 1839(3) and are related to products and services used in interstate commerce.

21. At all times relevant to this Complaint, CoreLogic owned the CoreLogic trade secrets as CoreLogic was the entity in which rightful legal or equitable title to the CoreLogic trade secrets is reposed.

22. As alleged herein, CoreLogic has taken reasonable measures to protect the secrecy of the CoreLogic trade secrets.

23. The CoreLogic trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily

- 5 -
COMPLAINT FOR DECL. AND INJ. RELIEF AND DAMAGES

ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

24. CoreLogic derives significant economic benefits from owning the CoreLogic trade secrets.

25. John Does 1-10 improperly acquired, disclosed, used, appropriated, took, carried away, concealed, copied, duplicated, downloaded, replicated, transmitted, sent, uploaded, communicated, or conveyed the CoreLogic trade secrets for their own benefit. CoreLogic is informed and believes that John Does 1-10 performed such acts in furtherance of the trade secret misappropriation in at least the Central District of California and the Western District of New York.

26. The use of the CoreLogic trade secrets by John Does 1-10 was without CoreLogic's authorization. CoreLogic did not consent to their acquisition, disclosure, or use of the CoreLogic trade secrets.

27. CoreLogic is informed and believes that one or more of John Does 1-10 intended to convert the CoreLogic trade secrets to the economic benefit of one other than their owner, CoreLogic.

28. CoreLogic is further informed and believes that John Does 1-10 knew and intended that CoreLogic, as the owner of the CoreLogic trade secrets, would be injured by their actions.

29. As a result of this misappropriation of CoreLogic's trade secrets, CoreLogic has suffered actual damages in an amount to be proven at trial.

30. As a result of this misappropriation, John Does 1-10 have been unjustly enriched.

31. CoreLogic is entitled to preliminary and permanent injunctive relief restraining John Does 1-10's improper use and disclosure of CoreLogic's trade secrets.

32. CoreLogic is informed and believes, and thereon alleges, that the misappropriation of CoreLogic's trade secrets was willful and malicious based on the facts alleged herein. John Does 1-10 acted with a purpose and willingness to commit the acts alleged, and their conduct was not reasonable under the circumstances. CoreLogic is therefore entitled to exemplary damages and attorney fees and costs. CoreLogic further seeks exemplary damages against John Does 1-10 in an amount up to two times the amount of CoreLogic's actual damages according to proof under 18 U.S.C. § 1836.

<u>Count Three</u>

(Trade Secret Misappropriation, Cal. Civ. Code §§ 3426 *et seq*.)

33. CoreLogic realleges and incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-32 above.

34. The confidential and proprietary CoreLogic data that John Does 1-10 obtained without authorization – including but not limited to the contents of the Risk Meter database – are trade secrets of CoreLogic within the meaning of the

Uniform Trade Secrets Act as enacted in California Civil Code Sections 3426 through 3426.11. The confidential and proprietary CoreLogic material is technical information that derived actual and potential economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

35. CoreLogic has made reasonable efforts to protect the secrecy of its trade secrets, including the secrecy of the intellectual property and material obtained by John Does 1-10.

36. John Does 1-10 have misappropriated CoreLogic's trade secrets by acquiring the trade secrets by improper means, including access to CoreLogic's computers and servers without authorization or access that exceeded authorization. On information and belief, John Does 1-10 also misappropriated CoreLogic's trade secrets by acquiring the trade secrets by improper means and by using the trade secrets for their own personal benefit, without CoreLogic's authorization or consent. This misappropriation of CoreLogic's trade secrets has caused and will continue to cause CoreLogic substantial injury, including, but not limited to actual damages, lost profits, harm to its reputation, and the diminution in value of its trade secrets. John Does 1-10, in addition, have been unjustly enriched by their misappropriation of CoreLogic's trade secrets.

37. CoreLogic is entitled to recover its actual damages for the misappropriation and/or to recover for unjust enrichment resulting from the

misappropriation.

38. CoreLogic is entitled to preliminary and permanent injunctive relief restraining John Does 1-10 from improper use and disclosure of CoreLogic's trade secrets.

39. The misappropriation of CoreLogic's trade secrets is willful and malicious, and accordingly, CoreLogic is entitled to exemplary damages and reasonable attorneys' fees and costs.

## Prayer for Relief

WHEREFORE, plaintiff CoreLogic prays for judgment against Defendants, inclusive as follows:

1. For compensatory, consequential, and incidental damages according to proof;
2. For recovery of the unjust enrichment obtained by Defendants as a result of their wrongful conduct;
3. For exemplary damages as provided in 18 U.S.C. § 1836 and Cal. Civil Code § 3426.3(c);
4. For preliminary and permanent injunctive relief commanding Defendants to cease and desist their unlawful conduct, including:
   a. their unauthorized access to CoreLogic's computers and servers;
   b. their viewing, copying, and dissemination of confidential and proprietary CoreLogic material and information and trade secrets to

third parties outside CoreLogic without its authorization or permission;

   c. their instruction to third parties to access, copy, use and disclose CoreLogic's confidential and proprietary material and information.

5. For an award of prejudgment interest and costs of suit to the extent permitted by law;

6. For an award of its reasonable attorneys' fees; and

7. For such other and further relief as the Court deems just and proper.

Dated: February 20, 2019

O'MELVENY & MYERS LLP

By: /s/Brett J. Williamson
Brett J. Williamson
Attorneys for Plaintiff
CoreLogic, Inc.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff CoreLogic, Inc. hereby demands a trial by jury on all issues so triable.

COMPLAINT FOR DECL. AND INJ. RELIEF AND DAMAGES

Dated: February 20, 2019

O'MELVENY & MYERS LLP

By: /s/Brett J. Williamson
Brett J. Williamson
Attorneys for Plaintiff
CoreLogic, Inc.

- 11 -
COMPLAINT FOR DECL. AND INJ. RELIEF AND DAMAGES